

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDAL RAZAK ALI (ISN 685),        ) | |
|                                   ) | |
| Petitioner,                       ) | |
|                                   ) | |
| v.                                ) | Civil No. 09-745 (RCL) |
|                                   ) | |
| BARACK OBAMA, *et al.*,           ) | |
|                                   ) | |
| Respondents.                      ) | |

## MEMORANDUM OPINION

Petitioner is a detainee at the United States Naval Base in Guantanamo Bay, Cuba ("Guantanamo") who is challenging the legality of his detention by seeking a writ of habeas corpus. Presently before the Court is petitioner's Motion [902] for Expedited Judgment.[1] Upon consideration of the motion, the opposition and reply thereto, the applicable law, and the entire record herein, the motion shall be denied for the reasons set forth below.

## I. BACKGROUND

Petitioner is an ▒▒▒▒ citizen named Said Bin Brahim Bin Umran Bakhouche.[2] (Factual Return and Narrative [hereinafter Return] ¶ 1.) He was captured on March 28, 2002 at a guesthouse in Faisalabad, Pakistan. (*Id.* ¶¶ 1, 30.) ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒

---

[1] Petitioner originally filed his Motion [902] for Expedited Judgment on January 16, 2009. Petitioner renewed the motion without modification on May 28, 2009 (*See* Order [1190]), and again on August 28, 2009 via phone with the Court. Respondents renewed their opposition without modification on September 9, 2009.

[2] In his motion, petitioner objects to many of the underlying documents relied upon in the factual return and its supplement because they are unreliable. (Mot. at 9-13.) For the purposes of this motion, however, the Court must accept all factual allegations as true. Nevertheless, the veracity of the underlying documents may still be contested in the future.



███████████████████████████████████████████ (*Id.* ¶¶ 15, 21.) ███████████████████████, a facilitator for Al-Qaida forces, controlled the guesthouse [hereinafter Zubaydah house] and was also captured there. (*Id.* ¶ 30; Supplemental Narrative [hereinafter Supplement] ¶ 1.) ████████████████████████████████████████████████ (Return ¶ 31.)

███████ was not a member of Al-Qaida. (Supplement ¶ 1.) However, he associated with Usama bin Laden and actively supported Al-Qaida. (*Id.*) Indeed, he met with bin Laden on several occasions. (*Id.*) He facilitated the travel of recruits to the Khaldan terrorist training camp in Afghanistan from 1994 until its closure in 2000.[3] (*Id.* ¶¶ 3, 4.) After the terrorist attacks of September 11, 2001, ███████ went to Khost, Afghanistan to prepare for the expected offensive against bin Laden. (*Id.* ¶ 5.) Then, when the Taliban retreated from Kandahar, he focused his efforts on helping fighters escape to Pakistan. (*Id.* ¶ 6). By late March 2002, ███████ was in Faisalabad moving from safehouse to safehouse and making preparations to continue fighting. (*Id.* ¶ 8.)

The Zubaydah house was one of the safehouses that was making preparations to continue to fight. Specifically, residents of the house were attempting to make chemical weapons, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (Return ¶¶ 26, ███████ Decl., "Guesthouses," p. 8 (Sept. 19, 2008).)

---

[3] The Khaldan camp was independent from Al-Qaida, but ███████ "coordinated and cooperated with bin Laden in the conduct of training and trainee movements between the camps." (Supplement ¶ 4.)

2

They were also learning computer skills and English while preparing for "martyrdom operations." (Supplement ¶ 8.) In addition, the Zubaydah house had a close relationship with the Issa house, another Faisalabad safehouse making preparations to continue to fight. (*See* Supplement ¶¶ 9-13.) According to ▇▇▇▇ who resided at the Zubaydah house and was captured with petitioner, petitioner was aware of these activities taking place at the Zubaydah house. (*Id.* ¶ 14.)



In addition to residing at the Zubaydah house, ▇▇▇▇ who also identified petitioner ▇▇▇▇ (*Id.* ¶ 27.) According to ▇▇▇▇ (*Id.*) ▇▇▇▇ (*Id.*) None of the individuals who identified petitioner, however, stated that petitioner was a member of Al-Qaida ▇▇▇▇

Petitioner has also provided three inconsistent accounts of his activities after September 11, 2001. In the first two accounts, petitioner traveled to Pakistan with a Libyan, ▇▇▇▇ (*Id.* ¶ 15.) The purpose of their trip was to learn how to read and write, and to study Islam. (*Id.*) In the first account, petitioner thought he arrived at a house in Pakistan in October 2001, but later learned that he was actually in Kabul, Afghanistan. (*Id.* ¶ 16.) He gave his passport and money to ▇▇▇▇ who then left petitioner in Kabul. (*Id.*) Three weeks later, petitioner arrived at the Zubaydah house in Faisalabad. (*Id.* ¶ 17.)

3

In the second account, ███████████████ (*Id.* ¶ 18.) ███████████

███████████████████████████

███████ (*Id.*) ███████████████

███████████████ (*Id.*) ███████

███████ (*Id.*) He then arrived at the Zubaydah house, where he stayed for about sixteen days before he was captured. (*Id.* ¶ 19.)

In his most recent account, petitioner admitted that ███████████ (*Id.* ¶ 21.) He stated that he ███████████████

███████ (*Id.*) ███████

███████████████████

(*Id.*) ███████████████

███████ (*Id.* ¶ 23.) ███████████ (*Id.*) Petitioner ███████████████ (*Id.* ¶¶ 24-25.)

Last, petitioner has received military training. ███████ ███████ (*Id.* at 8 n.4), and ███████████ (*Id.* ¶ 26).

## II. LEGAL STANDARD

This Court is operating under the Case Management Order ("CMO") issued by Judge Hogan of this Court in the consolidated Guantanamo habeas cases, Misc. No. 08-442, on November 6, 2008, as amended on December 16, 2008, and as amended on December 19, 2008 [797] by Judge Walton of this Court, and the Supplemental Case Management Order [1011]

4

("SCMO") issued by Judge Walton of this Court in *Gherbi v. Bush*, Civ. No. 04-1164 on February 19, 2009, as amended on March 27, 2009 [1101].[4]

Pursuant to the Amended SCMO:

> [a] petitioner may file a motion for expedited judgment on the record *only* if the petitioner believes in good faith that the allegations set forth in the narrative of the factual return for that petitioner, if assumed to be true, do not suffice to justify the detention of the petitioner pursuant to any authority conferred to the President by the Authorization for Use of Military Force, Pub. L. 107-40 (2001).

Amended SCMO [1101] at 7. Accordingly, a motion for expedited judgment on the record operates so that all allegations in the factual return are assumed to be true, and the Court gives respondents "the benefit of all reasonable inferences derived from the facts alleged." *Tooley v. Napolitano*, 556 F.3d 836, 839 (D.C. Cir. 2009).

This Court adopted the detention standard articulated by Judge Bates in *Hamlily v. Obama*, 616 F. Supp. 2d 63 (D.D.C. 2009), in a Memorandum Opinion [1187] on May 21, 2009. The relevant portion of the standard provides:

> [U]nder the AUMF . . . [t]he President has authority to detain persons who are or were part of the Taliban or Al Qaeda forces or associated forces that are engaged in hostilities against the United States or its coalition partners, including any person who has committed (*i.e.*, directly participated in) a belligerent act in aid of such enemy armed forces.

*Id.* at 77-78.[5] Accordingly, for the purposes of this motion, this Court must determine whether,

---

[4] This petition was originally before Judge Walton of this Court, and he amended Judge Hogan's CMO and issued a SCMO before the petition was transferred to the undersigned member of this Court on April 21, 2009 [1153]. Accordingly, Judge Walton's Amended CMO is binding on this Court.

[5] In adopting this standard, the Court resolved petitioner's issues with the definition of "enemy combatant." (Mot. at 13-17.) In addition, the *Hamlily* standard is consistent with international law and the principles of co-belligerency. *See* Curtis A. Bradely & Jack L. Goldsmith, *Congressional Authorization and the War on Terrorism*, 118 Harv. L. Rev. 2047,

5

accepting all respondents' factual allegations as true and giving respondents the benefit of all reasonable inferences derived from the facts alleged, the factual return suffices to show that petitioner is part of the enemy armed forces, and therefore may be detained under the Authorization for Use of Military Force ("AUMF").

## III. ANALYSIS

### A. Petitioner Was Functionally Part Of The Enemy Forces

Accepting all allegations as true and giving respondents the benefit of all reasonable inferences derived from the facts alleged, the Court finds that the factual return suffices to show that petitioner is part of the enemy armed forces, and thus may be detained pursuant to the AUMF.

It is undisputed that petitioner was not a member of Al-Qaida or the Taliban. (*See* Return ¶¶ 27-29.) However, one need not be a member of Al-Qaida or the Taliban in order to be detained. As stated in *Hamlily*, "[t]he key inquiry . . . is not necessarily whether one self-identifies as a member of the organization . . . , but whether the individual *functions or participates* within or under the command structure of the organization—*i.e,* whether he receives and executes orders or directions." 616 F. Supp. 2d at 75 (emphasis added). In applying the *Hamlily* inquiry, the factual allegations, accepted as true and viewed as a whole, demonstrate that petitioner is functionally part of enemy forces, and therefore may be detained under the AUMF.

First, petitioner has received military training on at least two occasions. ▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮ (Return at 8 n.4) ▮▮▮▮▮▮▮▮

---

2112-13 (2005) (stating that international law recognizes that an enemy in an armed conflict includes the enemy's associates and arguing that associates or agents of Al-Qaida are therefore recognized enemies under international law.)

6

▮▮▮▮▮ (*Id.* ¶ 26). His training and experience would make him an asset to the enemy forces either as a fighter or a trainer. ▮▮▮▮▮ It is common practice for terrorists to use aliases, which may take many forms. (▮▮▮▮▮ Decl., "Names, Aliases, Kunyas and Variants" at 4 (September 19, 2008).) Aliases may be descriptive of a physical trait or, like a nisba, may identify the residence of the person. (*Id.* at 3-4.) ▮▮▮▮▮ which demonstrates that petitioner identified himself as an ▮▮▮▮▮ (*Id.* at 9.) The fact that members of the enemy force knew petitioner by his alias tends to show that he was functionally part of the enemy forces and was known in their network.

In addition to identifying petitioner as ▮▮▮▮▮ (Return ¶ 27; ▮▮▮▮▮ Decl. at 9.) Terrorists often use multiple aliases, which may change upon one's location, "to provide a degree of 'cover' or operational security." (*Id.* at 4.) Accordingly, this shows that petitioner may have attempted to identify himself as a Libyan in order to provide cover for his true identity.

Third, several individuals have stated that they saw petitioner in Afghanistan. ▮▮▮▮▮ (Return ¶ 27.) ▮▮▮▮▮ Serving as a driver is sufficient to demonstrate that an individual is functionally part of the enemy forces. *See Hamlily*, 616 F. Supp. 2d at 75 (stating that an individual who houses, feeds or transports, Al-Qaida forces may be considered functionally part of the enemy forces.) Thus, these allegations contradict

7

petitioner's present position that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[6] (Return ¶ 25.)

Last, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Id.* ¶ 31). The fact that petitioner was allowed to stay at the same house as ▓▓▓▓ and other combatants demonstrates that it is plausible petitioner was part of the enemy forces. The Zubaydah house served as a place in which forces were reconstituting to return to battle. (Supplement ¶ 8.) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Id.* ¶ 14.) Furthermore, many of the individuals captured on the raid of the Zubaydah house had fled Afghanistan. (*Id.* ¶ 15.) Because petitioner was seen in Afghanistan in the fall of 2001, it is plausible that he too arrived at the Zubaydah house after fleeing Afghanistan.

Moreover, the fact that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ does not disqualify petitioner from being functionally a part of the enemy force. ▓▓▓▓ Guesthouses, such as the Zubaydah house, had standard operating procedures. (▓▓▓ Decl. at 3.) The administrator of the house would take one's "passport, identification, money, or other travel documents." (*Id.*) This enabled the administrator to exercise great control over individuals at a guesthouse, including directing individuals to go to other guesthouses. (*Id.*) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ which tends to show that he was under the control of someone in the enemy force. (Return ¶¶ 16, 18.)

In sum, in viewing the entire record and accepting all allegations as true and giving

---

[6] In petitioner's initial accounts ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓ (Return ¶¶ 16-18.)

8

respondents the benefit of all reasonable inferences, the Court finds that the factual return suffices to show that petitioner is part of the enemy armed forces, and thus may be detained pursuant to the AUMF. Accordingly, petitioner's motion is denied.

### B. Respondents Do Not Advance A "Guilt by Association" Theory

Petitioner contends that respondents advocate a "guilt by association" theory to justify petitioner's detention. (Mot. at 7-9.) In support of his argument, petitioner cites several First Amendment cases which are inapposite. To be sure, the First Amendment protects an individual's freedom to associate. U.S. CONST. amend. I. That right, however, is not at issue. The issue is whether petitioner is functionally part of the enemy forces. *See Hamlily*, 616 F. Supp. 2d at 75.

To answer that question, the Court must view the evidence as a whole. One such piece of evidence is petitioner's association with the Zubaydah guesthouse. As stated above, the guesthouse served as a safehouse for reconstituting forces to continue to fight. (Supplement ¶ 8.) When petitioner's association is viewed with the allegations that ████████████████████████████████████████████████████████████████ it is plausible that petitioner was functionally part of the enemy forces. ████████ Supplement ¶ 14.) Accordingly, the Court finds that petitioner's "guilt by association" argument is inapplicable to petitioner's habeas proceeding.

9

## IV. CONCLUSION

For the reasons stated above, petitioner's Motion for Expedited Judgment on the Record is denied. A separate order shall issue this date.

_9/24/09_  
DATE

_Royce C. Lamberth_  
ROYCE C. LAMBERTH  
CHIEF JUDGE

10