~~SECRET~~

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED WITH THE
COURT SECURITY OFFICER
CSO: _____
DATE: _____

ABDUL RAZAK ALI, )
)
Petitioner, )
)
v. ) Civil Case No. 10-1020 (RJL)
)
BARACK H. OBAMA,[1] *et al.*, )
)
Respondents. )

## CLASSIFIED MEMORANDUM OPINION
(February 2_, 2011)

For the reasons set forth on the record at the public hearing held on January 11, 2011, and for the following reasons, the Court DENIES petitioner Ali's petition for a writ of habeas corpus.

## BACKGROUND

Petitioner Abdul Razak Ali, who now claims his name to be Saeed Bakhouche (hereafter "petitioner," "Bakhouche," or "Razak"), is a forty-year old Algerian citizen who was captured on March 28, 2002, by Pakistani forces in a raid at a guesthouse in Faisalabad, Pakistan. (Gov't Amended Narrative Regarding Petitioner Abdal Razak Ali (ISN 685)), Sept. 10, 2010, ¶¶ 49, 50 (hereafter "Am. Narr.").) He was caught together with a well known Al Qaeda facilitator: Abu Zubaydah. (*Id.*) Indeed, Abu Zubaydah

---

[1]   Pursuant to Federal Rule of Civil Procedure 25(d), if a public officer named as a party to an action in his official capacity ceases to hold office, the court will automatically substitute that officer's successor. Accordingly, the Court substitutes Barack H. Obama for George W. Bush.

1

~~SECRET~~

~~SECRET~~

was at that very time assembling a force to attack U.S. and Allied forces. (Am. Narr. ¶¶ 17, 42.) Captured along with the petitioner and Abu Zubaydah were a bevy of Abu Zubaydah's senior leadership (Am. Narr. ¶ 41), including instructors in engineering, small arms, English language (with an American accent), bomb-making, and electrical circuitry. ▮▮▮▮▮▮▮ Am. Narr. ¶ 41.) Also found at the guesthouse were pro-al Qaeda literature,[2] electrical components, electrical schematics and diagrams (in both Arabic and English), notes on circuitry, and at least one item – a[1] ▮▮▮▮▮▮▮ typically used as a timer for remote bombing devices (*i.e.*, improvised explosive devices or "IED"s). (*See* Gov't Exs. 4, 69-73.) Petitioner was transported to Bagram Air Force Base for questioning (*see* Gov't Ex. 99), where he was held until his transfer to the U.S. Naval Base in Guantanamo Bay, Cuba, in June 2002. (Classified Hr'g Tr., Dec. 17, 2010, at 66:2-6.)

## ANALYSIS

The Government contends that the petitioner was a member of Abu Zubaydah's force that was reorganizing at that guesthouse in Faisalabad, Pakistan, and preparing for future operations against U.S. and Allied forces. (Am. Narr. ¶ 17.) In particular, the Government contends that the petitioner: (1) lived with Abu Zubaydah and a cadre of his lieutenants during a two week period (Am. Narr. ¶ 41); (2) previously traveled with Abu Zubaydah's force through Afghanistan and ultimately fled with them through Afghanistan to Pakistan (Am. Narr. ¶¶ 29-32, 35, 37-40); and (3) took an English course

---

[2] Among the evidence the Government offered was a photographic catalog of items recovered from the Faisalabad guesthouse, including an artillery manual with "al Qaida" written on the cover in Arabic. (*See* Gov't Ex. 70, at Nos. 67-68.)

2

~~SECRET~~

UNCLASSIFIED//FOR PUBLIC RELEASE

~~SECRET~~

(with an American accent) while he was staying at Abu Zubaydah's guesthouse (Gov't Exs. 64 at 1; 65 at 1; 68 at 5; ▮▮▮ Classified Hr'g Tr., Dec. 17, 2010, at 16:10-21.) As a result, the Government argues that petitioner Bakhouche is the type of individual that is detainable under the AUMF because he was "part of" an "associated force" (*i.e.*, Abu Zubaydah's force) engaged in hostilities against the United States or its Allied forces.

Petitioner, not surprisingly, disagrees. Although he acknowledges being captured in the same guesthouse as Abu Zubaydah, he denies: (1) ever being in Afghanistan, let alone being with Abu Zubaydah's force there (Pet.'s Am. Traverse, Nov. 8, 2010, at 52, 58); (2) ever taking an English course from Abu Zubaydah's trainers at the guesthouse (Gov't Exs. 27 at 2; 28 at 2; 56 at 1); and (3) ever being a member, permanent or otherwise, of Abu Zubaydah's force (*see* Pet.'s Am. Traverse, Nov. 8, 2010, at 25, 27, 51, 58). In essence, he claims that the Government has mistakenly identified him as a member of Abu Zubaydah's force, who traveled with Abu Zubaydah in Afghanistan and fled with him to Pakistan before gathering at this particular guesthouse to start preparing for their next offensive against U.S. and Allied forces. Upon reviewing the Return, the Traverse, and the oral argument during the merits hearing, I disagree with the petitioner's contention and conclude for the following reasons that the Government has more than adequately established that it is more likely than not that petitioner Bakhouche was, in fact, a member of Abu Zubaydah's force and is therefore detainable under the AUMF.

3

~~SECRET~~

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

~~SECRET~~

At the outset, it is worth noting that our Circuit Court has *unequivocally* recognized that Abu Zubaydah and his band of followers have well established ties to al Qaeda and the Taliban and thus constitute an "associated force" under the AUMF. *See Barhoumi v. Obama*, 609 F.3d 416, 420 (D.C. Cir. 2010) (affirming the district court's conclusion that Barhoumi was part of "[Abu] Zubaydah's militia – an 'associated force that was engaged in hostilities against the United States or its coalition partners'" and affirming denial of petitioner Barhoumi's writ); *see also Al Harbi v. Obama*, No. 05-02479, 2010 WL 2398883, at *14 (D.D.C. May 13, 2010) ("There appears to be no dispute that Abu Zubaydah was an al Qaeda operative and that Al Qaeda-related activities took place in his [Faisalabad] house."). Thus, a member of Abu Zubaydah's force is, by definition, detainable under the AUMF. Indeed, petitioner does not dispute this, and petitioner's counsel readily admits the same. (Classified Hr'g Tr., Dec. 14, 2010, at 30:3-7.) Instead of challenging the lawfulness of detaining a member of Abu Zubaydah's force, petitioner instead focuses on whether he was *actually* a member of Abu Zubaydah's force.

The Government, of course, does not rely exclusively on petitioner's capture in the same guesthouse as Abu Zubaydah – although the Government contends, and the Court agrees, that that *alone* is enough to warrant petitioner's detention under the AUMF. *See Khalifh v. Obama*, No. 05-1189, WL 2382925 at *4 (D.D.C. May 29, 2010) ("Whatever interaction [petitioner] might have had with the top terrorists he met, whether it was limited or extended, his presence with them at [a] guesthouse is quite powerful support to

4

~~SECRET~~

UNCLASSIFIED//FOR PUBLIC RELEASE

the inference that he was considered a member of al Qaida (and/or associated forces) at the time. Without such an understanding, he would not have been permitted to be around so many terrorists for any amount of time."). Instead, the Government directs this Court to what petitioner was doing *while* he was at the guesthouse with Abu Zubaydah and his senior leadership, and what he was doing *before* he arrived at that guesthouse.

As to the former, the Government sets forth credible accounts by fellow guesthouse-dwellers who not only positively identified the petitioner by one or more of the various names he was using at that time – *i.e.*, Abdul Razak or Usama al Jaza'iri[3] – but who also credibly account for petitioner participating in one of Abu Zubaydah's various training programs while he was staying in the guesthouse (*i.e.*, taking a class in English). Specifically, ISN 703 identified the petitioner as Abdul Razak and stated that he witnessed him receiving English-language classes from another guesthouse member, Ghassan Abdulla al-Sharbi (ISN 682) (Gov't Ex. 64 at 1), a "permanent member" of Abu Zubaydah's force (Gov't Ex. 136 at 67, No. 12) who was also detained in the March 2002

---

[3] At one point during the habeas petition merits hearing, petitioner's counsel even contended that her client was not the same Abdul Razak that his fellow Abu Zubaydah guesthouse-lodgers had identified by that very name. Unfortunately for petitioner, the Government was able to produce a copy of the exact photograph (number ▮▮▮▮) that was shown to those detainees. That photograph, as it turns out, is unequivocally a photo of the petitioner. (*See* Classified Hr'g Tr., Dec. 17, 2010, at 24:13-15.) Moreover, one of those detainees (ISN 707) also identified the petitioner by a second name that he used during that time period: Usama al Jaza'iri. (*See* Gov't Ex. 37; Gov't Ex. 68; Pet.'s Ex. 43.) Considering that these fellow guesthouse lodgers were people that the petitioner independently identified as living with him at the time of their capture, it is hard, to say the least, to accredit petitioner's "misidentification" argument.

raid.[4] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ a contemporaneous diary propounded by one of Abu Zubaydah's close friends (the "al Suri Diary")[5] explained that English lessons were an important aspect of Abu Zubaydah's training program. (Gov't Ex. 136 at 58 ("Soon our program will begin specializing in electronics, English language, computer and internet").) Another credible source, ISN 707,[6] who was also captured in the guesthouse, identified the petitioner as Usama Al-Jaza'iri and stated that

---

[4] In a later interview, ISN 703 once again stated that Abdul Razak was present for English classes. (Gov't Ex. 65 at 1.)

[5] Our Court of Appeals, in a recent case involving another detainee, found this very diary to be a credible source as to that other detainee's membership in Abu Zubaydah's force. *Barhoumi v. Obama*, 609 F.3d 416, 432 (D.C. Cir. 2010).

[6] The Government contends, and I agree, that ISN 707 is credible with respect to his photo identifications of the petitioner as Abdul Razak and Usama al Jaza'iri, and as to his statements regarding the petitioner taking English lessons while they were staying together at the Faisalabad guesthouse. How so? First of all, with respect to ISN 707's identification of petitioner as Abdul Razak in photograph ▮▮▮▮ that identification was made on multiple occasions and was corroborated independently by a number of the other detainees who were staying at the same guesthouse. As to his knowledge of petitioner's other nickname ("kunya"), Usama al Jaza'iri, that too is not only credible but is consistent with the Government's other evidence. In particular, it is well established that detainees like the petitioner frequently have more than one kunya, and since the petitioner by his own admission is an Algerian, having a kunya ("al Jaza'iri") that means "the Algerian" is perfectly appropriate. (*See* Gov't Ex. 20.) Moreover, ISN 707's multiple identifications of the petitioner on a number of separate occasions as a fellow guesthouse-dweller is consistent with the al Suri Diary's listing of the petitioner by the name Usama al Jaza'iri as a permanent member of Abu Zubaydah's force. (Gov't Ex. 136 at 67.) All in all, absent any basis to believe that ISN 707 would falsely represent his identification of petitioner, the Court is satisfied with ISN 707's credibility as to this particular point. As for his taking the English classes offered in the guesthouse, once again this statement by ISN 707 is independently corroborated by at least one other guesthouse-dweller, ISN 703, and is perfectly consistent with petitioner being at that guesthouse at that time.

they actively sought English lessons together. (Gov't Ex. 68 at 5; Classified Hr'g Tr., Dec. 15, 2010, at 67:15-17.)[7] Thus, combining this evidence with the obvious and common-sense inference that a terrorist leader like Abu Zubaydah would not tolerate an unknown and untrusted stranger to dwell in a modest, two-story guesthouse for two weeks with himself and ten or so of his senior leadership, while they are preparing for their next operation against U.S. and Allied forces, the Court cannot help but conclude that petitioner's presence at this guesthouse is enough, *alone*, to find that he was more likely than not a member of Abu Zubaydah's force. But, there is more!

The Government also introduced credible evidence placing the petitioner with Abu Zubaydah's force in various places in Afghanistan prior to his stay at the Faisalabad guesthouse. For example, ISN 707, the detainee who positively identified petitioner's photo by both of the names he was using at that time (*i.e.*, Abdul Razak and Usama al Jaza'iri) (*see* Gov't Ex. 37 at 5; Gov't Ex. 68 at 4; Pet.'s Ex. 43), placed Usama al Jaza'iri in Barmal, Afghanistan, prior to their arrival in Pakistan. (Gov't Ex. 68 at 2.) Specifically, ISN 707 described the route he and a group of comrades took while fleeing Afghanistan to avoid American air strikes. (*Id.* at 1-2.) Moreover, ISN 707 admitted to taking shelter with the petitioner at a local school in Afghanistan, together with Abu Zubaydah himself and several of the other detainees captured later at the Faisalabad guesthouse. (*Id.* at 2.) According to ISN 707, that group eventually evacuated Barmal

---

[7] Notwithstanding accounts from multiple guesthouse-dwellers – and corroboration from the al Suri Diary – petitioner denies that he ever took English lessons, much less for sinister purposes. (*See, e.g.*, Gov't Ex. 65 at 1; Pet.'s Ex. 23.) These blanket denials, however, are easily overcome by the overwhelming and persuasive evidence offered by men who knew petitioner and dwelled with him in the guesthouse.

~~SECRET~~

and traveled together to Bannu, Afghanistan, before being "distributed into two guesthouses." (*Id.*) Moreover, ISN 707's statements do not stand alone. They are corroborated by the al Suri Diary, which not only lists the petitioner – under the same name Usama al Jaza'iri – as a *permanent* member of Abu Zubaydah's group, but effectively[8] places him on the Afghanistan-Pakistan border in January 2002 with a group of the very same people ISN 707 described as fleeing together from Afghanistan, only to be captured together later in the Faisalabad guesthouse. (*See* Gov't Ex. 136, at 6, 67.)

Finally, petitioner is cited by his name "Usama al Jaza'iri" in an enemy report listing the survivors of a fire at a guesthouse barracks in Khowst, Afghanistan, in 2001. (Gov't Ex. 94; Gov't Ex. 120.) The Government contends that the report was written contemporaneously by a member of al Qaeda, the Taliban, or an associated force who was in the guesthouse barracks at the time of the fire and who reported the accident to another member of the same associated force. (Classified Hr'g Tr., Dec. 14, 2010, at 113:3-115:7.) Indeed, the incident report,[9] which was later seized by Allied Forces in Kabul in 2002, is dated "Thursday, the 28th of Shaban," an Islamic calendar month

---

[8] Although the diary does not specifically list petitioner, by name, as being with the group at that location, it effectively refers to petitioner by characterizing certain group members by their relationships with Usama al-Jaza'iri. (*See* Gov't Ex. 136 at 6 (describing "the brothers who worked as trainers in the same camp such as Ashur al-Jaza'iri, Usamah al-Jaza'iri, [and] Abd al-Bari al-Filistani").)

[9] Also contained in the report is a list of "material losses" from the fire, which includes a Kalashnikov, an ammunition pouch, and a [rocket-propelled grenade]. (Gov't Ex. 94 at 3.)

8

~~SECRET~~

UNCLASSIFIED//FOR PUBLIC RELEASE

~~SECRET~~

which – when converted to a Western calendar – would be November 15, 2001. (*See* Gov't Ex. 137; Classified Hr'g Tr., Jan. 11, 2011, at 50:2-51:2.)

In sum, the Government proffered more than enough credible evidence for this Court to conclude that it is more likely than not that petitioner was, indeed, a member of Abu Zubaydah's force. That conclusion, I might add, is corroborated further by petitioner's own admission – when he was first interrogated – that he had gone to Afghanistan to fight in the jihad against the U.S. and its Allied forces. (Gov't Ex. 23 at 10.)

Bakhouche, of course, vigorously denies the accuracy of the various photo identifications of him as Abdul Razak, and especially the one photo identification of him as Usama al Jaza'iri. In particular, he denies being the "Usama al Jaza'iri" referred to in the al Suri Diary and the fire incident report and denies being a member, much less a permanent member, of Abu Zubaydah's force who traveled with them for a protracted period in Afghanistan. Notwithstanding petitioner's protestations to the contrary, the evidence introduced clearly rebuts his position. Indeed, while his challenge to the reliability of certain photo identifications might be more compelling if these witnesses had only seen him on one specific occasion in either Pakistan or Afghanistan, it is particularly undercut by petitioner's own admission that he had stayed at the Abu Zubaydah guesthouse with not only the witness who identified him as Usama al Jaza'iri, but also with a number of the other witnesses who identified him as Abdul Razak. Simply put, Bakhouche's effort to undermine the reliability of the Government's

~~SECRET~~
UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

~~SECRET~~

evidence linking him to the Abu Zubaydah group *prior* to his capture at the guesthouse is inherently flawed and undermined by his own lack of credibility on certain critical points. In particular, Bakhouche's stubborn insistence that he had never been to Afghanistan, and did not know or interact in any way with Abu Zubaydah and his lieutenants in that relatively small guesthouse where they were all captured together, was *wholly* incredible.

As such, the Court has no difficultly concluding that the Government more than adequately established that it is more probable than not that the petitioner was in fact a member of Abu Zubaydah's force that had gathered in that Faisalabad guesthouse to prepare for future attacks against U.S. and Allied forces. Accordingly, petitioner Bakhouche is being lawfully detained under the AUMF and this Court must, and will therefore, DENY his petition for a writ of habeas corpus.

## CONCLUSION

For all of the foregoing reasons, it is hereby **ORDERED** that petitioner Abdul Razak Ali's, a.k.a. Saeed Bakhouche's, petition for a writ of habeas corpus is **DENIED**.

**SO ORDERED.**

_____
RICHARD J. LEON
United States District Judge

~~SECRET~~

UNCLASSIFIED//FOR PUBLIC RELEASE