# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Abdul Razak Ali, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| v. | ) Civil Case No. 10-cv-1020 (RJL) |
| | ) |
| Donald J. Trump, *et al.*, | ) |
| | ) |
|     Respondents. | ) |
| | ) |

**FILED**

**AUG 1 0 2018**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION

August __10th__, 2018 [Dkt. # 1529]

Petitioner Abdul Razak Ali ("Ali" or "petitioner") challenges his continued detention at the United States Naval Station at Guantanamo Bay, Cuba, where he has been held since June 2002. Although this Court, *Ali v. Obama*, 741 F. Supp. 2d 19 (D.D.C. 2011), and our Court of Appeals, *Ali v. Obama*, 736 F.3d 542 (D.C. Cir. 2013), previously determined that Ali could lawfully be detained as an enemy combatant under the Authorization for Use of Military Force ("AUMF"), Pub. L. No. 107–40 § 2(a), 115 Stat. 224 (2002), Ali now argues that the amount of time that has passed since his apprehension renders his continued detention unlawful under the AUMF and the due process clause of the Fifth Amendment to the U.S. Constitution, U.S. Const. amend. V.

Currently before the Court is Ali's Corrected Motion for Order Granting Writ of Habeas Corpus [Dkt. # 1529] ("Corrected Mot."). Upon consideration of the pleadings, the law, the record, and for the reasons stated below, I find that Ali's detention remains

lawful, and **DENY** his Corrected Motion for Order Granting Writ of Habeas Corpus [Dkt. # 1529].

## BACKGROUND

Petitioner Abdul Razak Ali is an Algerian national. *See Ali*, 741 F. Supp. 2d at 21. In March 2002, he was captured by Pakistani forces in a four-bedroom house in Faisalabad, Pakistan along with a well-known al Qaeda facilitator, Abu Zubaydah. *Id.* Indeed, Abu Zubaydah was at that very time assembling a force to attack U.S. and Allied forces. *Id.* Captured along with petitioner and Abu Zubaydah were a bevy of Abu Zubaydah's senior leadership, including instructors in engineering, small arms, English language (with an American accent), and various electrical circuitry specialists. *See id.* Also found at the guesthouse were pro-al Qaeda literature, electrical components, and at least one device typically used to assemble remote bombing devices (*i.e.*, improvised explosive devices or "IEDs"). *See id.* Following his capture, and before his transfer to Guantanamo, Ali was transported to Bagram Air Force Base for questioning. *See id.* Since June 2002, he has been held at the U.S. Naval Base at Guantanámo Bay.

Ali filed his first petition for writ of habeas corpus in this Court on December 21, 2005. *See* Pet. for a Writ of Habeas Corpus, *Ali v. Bush*, Civ. No. 5-2386 (D.D.C. Dec. 21, 2005) [Dkt. # 1]. The case was initially assigned to Judge Walton. As with the hundreds of other habeas petitions filed around the same time, Ali's case was stayed pending the U.S. Supreme Court decision in *Boumediene v. Bush*, 553 U.S. 723, 771 (2008) (holding that Guantanamo detainees are "entitled to the privilege of habeas corpus to challenge the legality of their detention").

Following the *Boumediene* decision, for reasons of judicial economy, Judge Walton transferred this case to then-Chief Judge Royce Lamberth. Order, *Ali v. Obama*, Civ. No. 5-2386 (D.D.C. Apr. 21, 2009) [Dkt. # 1153]. On June 6, 2010, while the discovery process was pending, and after denying Petitioner's Motion to Expedite, Judge Lamberth recused himself on Petitioner's Motion. Order, *Ali v. Obama*, Civ. No. 5-2386 (D.D.C. June 6, 2010) [Dkt. # 1418]. On June 16, 2010, Ali's case was randomly reassigned to this Court. *See* Reassignment of Civil Case, *Ali v. Obama*, Civ. No. 9-745 (D.D.C. June 16, 2010) [Dkt. # 1419].

On August 25, 2010, I issued a Case Management Order ("CMO"). *See* Case Management Order, *Ali v. Obama*, Civ. No. 10-1020 (D.D.C. Aug. 25, 2010) [Dkt. # 1423]. This order was virtually identical to those issued in the eight habeas petitions that had been previously litigated before this Court. *See Ali*, 741 F. Supp. 2d at 22. The CMO placed the burden of proof on the Government, set the standard of proof as preponderance of the evidence, provided discovery rights for detainees (including a right to "exculpatory" materials), formulated the procedural processes that would guide the hearings in Court, and set forth the definition of "enemy combatant." *Id.* at 24 n.2.[1] These procedures had already

---

[1] The definition of enemy combatant is as follows:

> [A]n individual who was part of or supporting Taliban or al Qaeda forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who has committed a belligerent act or has directly supported hostilities in aid of enemy armed forces.

*Ali v. Obama*, 741 F. Supp. 2d 19, 24 (D.D.C. 2011) (quoting *Boumediene v. Bush*, 583 F. Supp. 2d 133, 135 (D.D.C. 2008)).

been blessed by our Court of Appeals. *See Al-Bihani v. Obama*, 590 F.3d 866, 869–70, 875–881 (D.C. Cir. 2010).

In December 2010, I conducted three days of hearings on the merits of Ali's petition. Unfortunately for Mr. Ali, following those hearings, I concluded that he was being lawfully detained as an "enemy combatant." *Ali*, 741 F. Supp. 2d at 27. I based this determination on (i) the undisputed fact that Ali was captured at a guesthouse in Faisalabad, Pakistan, with a well-known al Qaeda facilitator, Abu Zubaydah;[2] (ii) credible testimony from other individuals at the guesthouse that Ali participated in Abu Zubaydah's "training programs" while in their company at the guesthouse; and (iii) credible evidence placing Ali in various locations in Afghanistan with Abu Zubaydah and his band of followers. *See id.* at 25–27. Our Circuit affirmed my decision on December 3, 2013. *See Ali*, 736 F.3d at 543. And at oral argument in this case, Ali's counsel confirmed that the present habeas petition does *not* challenge my earlier ruling as to the legality of Ali's apprehension and detention. *See* 3/23/18 Hr'g Tr. 4:25-5:5 [Dkt. # 1535].

## PETITIONER'S CURRENT STATUS

In January 2009, President Obama established the Guantanamo Bay Review Task Force. *See* Exec. Order No. 13,492, 74 Fed. Reg. 4897 (Jan. 22, 2009). The Task Force was charged with evaluating whether each detainee's "continued detention is in the national security and foreign policy interests of the United States." *Id.* § 2(d), 74 Fed. Reg.

---

[2] Other courts in this district have concluded that Abu Zubaydah and his band of followers had well established ties to al Qaeda and the Taliban, and were thus an "associated force" under the 2001 Authorization for the Use of Military Force. *See Barhoumi v. Obama*, 609 F.3d 416, 420, 432 (D.C. Cir. 2010); *Al Harbi v. Obama*, No. 05-02479, 2010 WL 2398883, at *14 (D.D.C. May 13, 2010).

4

4897–99. The Task Force reviewed the status of each Guantanamo detainee, and made a recommendation whether to (i) transfer the detainee, (ii) continue his detention, or (iii) prosecute him. Final Report: Guantanamo Rev. Task Force at 1 (Jan. 22, 2010) ("GTMO Task Force Report"), https://www.justice.gov/sites/default/files/ag/legacy/2010/06/02/guantanamo-review-final-report.pdf.

A separate Executive Order requires periodic status reviews of detainees, like Ali, whom the Task Force decided to continue to detain. *See* Exec. Order 13,567, 76 Fed. Reg. 13,277 (Mar. 7, 2011); *see also* Exec. Order 13,823, 83 Fed. Reg. 4831, 4831–32 (Jan. 30, 2018) (continuing these procedures for periodic reviews). The Periodic Review Board ("PRB" or "Board") conducts these reviews. This process assesses whether continued custody of a detainee is necessary to protect against a significant threat to the security of the United States. Exec. Order 13,567, § 2. It is not intended as an assessment of the legality of continued detention. *Id.* § 8.

After the initial PRB review, each detainee is eligible for a "full" review every three years. *Id.* § 3(b). In addition, each detainee is eligible for a "file review" every six months. *Id.* § 3(c). If the file review reveals that a "significant question" has arisen concerning the detainee's continued detention, then a full PRB review is promptly convened. *Id.*

In its February 16, 2018 submission, the Government represented that Ali had his initial Periodic Review Board hearing on July 6, 2016. *See* Respondents' Opposition to Petitioners' Mot. for Order Granting Writ of Habeas Corpus, *Ali v. Trump*, Civ. No. 10-1020, at 7 (Feb. 16, 2018) [Dkt. # 1525] ("Opp'n"). The PRB designated Ali for continued

detention. *Id.* Ali's PRB file was reviewed on February 3, 2017 and again on September 1, 2017. *Id.* As of February 14, 2018, Ali has a third PRB file review ongoing. *Id.*

Notwithstanding his pending PRB review, Ali and ten other detainees jointly filed a Motion for Petition for Habeas Corpus on January 11, 2018. Mot. for Order Granting Writ of Habeas Corpus, Civ. No. 10-1020 [Dkt. # 1512]. An identical motion was filed in all nine separate cases.[3] On January 22, 2018, I set a briefing schedule, ordering that the Government file its Opposition by Friday, February 16, 2018, and that Petitioner file his Reply by Friday, March 9, 2018.[4] Following the March 5, 2018 status conference, Ali filed a Corrected Motion for Order Granting Writ of Habeas Corpus in the case at bar in order to address a clerical error in the case caption. [Dkt. # 1529]. The briefing is complete and the motion is ripe for review.

## LEGAL STANDARD

The Government bears the burden of proving by a preponderance of the evidence that Ali is lawfully detained. If the Government fails to meet that burden, the Court must grant the petition and order Ali's release. This is the standard that governed the Court's review of Ali's original habeas petition. *See* Case Management Order, *Ali v. Obama*, Civ. No. 10-1020, at 3 (D.D.C. Aug. 25, 2010) [Dkt. # 1423] ("The Government must establish, by a preponderance of the evidence, the lawfulness of the petitioner's detention. The

---

[3] This Court retained Civ. No. 10-1020. Judge Sullivan similarly retained jurisdiction over Civ. Nos. 8-1360 and 5-23. Judge Kollar-Kotelly, Judge Lamberth, and Judge Walton agreed to transfer the cases assigned to them to Judge Hogan. These transfers were made on January 18, 2018.

[4] Judges Hogan and Sullivan ordered the same briefing schedule in their cases. Petitioners and Government have filed identical pleadings in all cases.

Government bears the ultimate burden of persuasion that the petitioner's detention is lawful."). Our Circuit has repeatedly affirmed that a preponderance standard is constitutionally appropriate when reviewing Guantanamo detainee habeas petitions. *See Al Odah v. United States*, 611 F.3d 8, 13–14 (D.C. Cir. 2010) ("It is now well-settled law that a preponderance of the evidence standard is constitutional in considering a habeas petition from an individual detained pursuant to authority granted by the AUMF."); *Awad v. Obama*, 608 F.3d 1, 10 (D.C. Cir. 2010) ("[A] preponderance of the evidence standard is constitutional in evaluating a habeas petition from a detainee held at Guantanamo Bay, Cuba.").

## DISCUSSION

Ali advances two arguments: that (i) the Government lacks the authority under the Authorization for the Use of Military Force ("AUMF"), Pub. L. 107–40, § 2(a), 115 Stat. 224 (Sept. 18, 2001), to continue to detain him, *see* Corrected Mot. at 29–37; Petitioners' Reply in Support of Mot. for Order Granting Writ of Habeas Corpus 15–25 [Dkt. # 1528] ("Reply"); and (ii) Ali's continuing detention deprives him of both substantive and procedural due process, *see* Corrected Mot. at 15–29; Reply at 7–15.[5] Although repackaged under different authority, these arguments flow from the same premise: that

---

[5] Ali's brief contains a third line of argument—that "the continuing detention of petitioners approved for transfer from Guantanamo violates substantive due process because their detention no longer serves its ostensible purpose." Corrected Mot. at 26 (alteration in original). This line of argument does not apply to Ali, who has not been deemed eligible for transfer. Opp'n at 7. Instead, this argument applies only to Tofiq Nasser Awad Al-Bihani and Abdul Latif Nassar, two petitioners who have been cleared for transfer and whose habeas motions are pending before Judge Hogan. *See* Corrected Mot. at 26. Ali, Al-Bihani, and Nassar, along with eight other detainees, all filed identical briefs, despite the different factual circumstances surrounding their detention.

the duration of Ali's detention erodes the legal basis for his continued detention. Ali, in effect, asks this Court to use its "broad, equitable common law habeas authority" to order the issuance of a writ of habeas corpus. *Id.* at 37. For the following reasons, I cannot do so!

### I. The Government's Detention Authority Pursuant to the AUMF

Ali first argues that the Executive Branch lacks the authority to continue to detain him. He contends that he is effectively subject to "indefinite" detention, since the campaign against al Qaeda, Taliban, and associated forces continues to persist. Corrected Mot. at 1. Such "indefinite" detention, the argument goes, exceeds the scope of the Government's detention authority under the AUMF. *Id.* Second, Ali contends that the sheer length of the conflict has "unraveled" the Government's authority pursuant to the AUMF, since "the practical circumstances of the conflict with al Qaeda have long ceased to resemble any of the conflicts that informed the development of the law of war." *Id.* at 3 (alteration in original). Unfortunately for the petitioner, both arguments are without merit.

Shortly after the September 11, 2001 terrorist attacks, Congress passed the Authorization for Use of Military Force ("AUMF"), which provides:

> That the President is authorized to use all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons, in order to prevent any future acts of international terrorism against the United States by such nations, organizations or persons.

Pub. L. 107–40, § 2(a), 115 Stat. 224 (Sept. 18, 2001). The AUMF gives the President authority to detain enemy combatants—i.e., individuals who were "part of" or provided

support to al Qaeda and Taliban forces in Afghanistan. *Al-Bihani*, 590 F.3d at 872 ("[An individual] is lawfully detained [under the AUMF if he] is . . . an individual who was part of or supporting Taliban or al Qaeda forces, or associated forces that are engaged in hostilities against the United States or its coalition partners" (quotations omitted)).[6]

In 2004, a plurality of the Supreme Court observed in *Hamdi v. Rumsfeld* that it was a "clearly established principle of the law of war that detention may last no longer than active hostilities." 542 U.S. 507, 520–21 (2004) (plurality opinion) (citing Geneva Convention (III) Relative to the Treatment of Prisoners art. 118, Aug. 12, 1949, [1955] 6 U.S.T. 3316, 3406, T.I.A.S. No. 3364); *see also Al-Alwi v. Trump*, No. 17-5067, slip op. at 8 (D.C. Cir. Aug. 7, 2018) (observing that "the laws of war are open-ended and unqualified" in permitting detention of enemy combatants for the duration of active hostilities). Informed by the principles of the law of war, the Court held that the AUMF's grant of authority to use "necessary and appropriate force" included within it "the authority to detain [enemy combatants] for the duration of the relevant conflict." *Id.* at 521; *see also Aamer v. Obama*, 742 F.3d 1023, 1041 (D.C. Cir. 2014) (same). Because Ali does not challenge this Court's initial determination that he was "part of Al Qaeda, the Taliban, or associated forces," and because "hostilities are ongoing," the Government may continue to detain him. *Aamer*, 742 F.3d at 1041; *see also Al-Alwi v. Trump*, No. 17-5067, slip op. at 8 (D.C. Cir. Aug. 7, 2018) ("Although hostilities have been ongoing for a considerable

---

[6] This Court has already determined that Ali is an enemy combatant who can be lawfully detained under the AUMF. *See Ali*, 741 F. Supp. 2d at 27, *aff'd, Ali*, 736 F.3d at 550. Ali does not challenge this initial determination. *See* 3/23/18 Hr'g Tr. 4:25-5:5 [Dkt. # 1535]; *cf.* Corrected Mot. at 23. Instead, Ali's motion presents the question whether the Government's detention authority has lapsed in the sixteen years since his capture.

amount of time, they have not ended."). Ali's detention, far from open-ended and "indefinite," is tied to this ongoing conflict against al Qaeda, the Taliban, and associated forces. As such, Ali's first argument, that he is subject to "indefinite" detention that exceeds the Government's authority under the AUMF, is wholly without merit.

As for Ali's second argument, that the war against al Qaeda and the Taliban has ended, our Circuit Court has already made short shrift of this argument. In essence, Ali invites this Court to undertake a wide ranging factual inquiry into whether active hostilities persist. To say the least, it would not be proper for this Court to do so. In *Al-Bihani v. Obama*, our Circuit Court rejected a Guantanamo detainee's argument that the United States' war against the Taliban had ended and that he must therefore be released. 590 F.3d at 874. The Circuit Court noted that release was required after the cessation of active hostilities, but held that the "determination of when hostilities have ceased is a political decision, and we defer to the Executive's opinion on the matter, at least in the absence of an authoritative congressional declaration purporting to terminate the war." *Id.*

Just days ago, our Circuit Court reaffirmed *Al-Bihani*'s holding. *See Al-Alwi*, slip op. at 8. In *Al-Alwi*, the panel held that the AUMF continues to supply authority to detain an enemy combatant captured in 2001 after having "stayed in Taliban guesthouses, traveled to a Taliban-linked training camp to learn how to fire rifles and grenade launchers and joined a combat unit led by an al Qaeda official that fought alongside the Taliban." *Id.* at 3. Instead, our Circuit Court specifically rejected the notion that "the nature of hostilities has changed such that the particular conflict in which [the detainee was] captured is not the same conflict that remains ongoing today." *Id.* at 10. To the contrary, the Court explained,

"the Executive Branch represents, with ample support from record evidence, that the hostilities described in the AUMF continue." *Id.* That Executive Branch judgment and representation, in the absence of a "contrary Congressional command," ends the judicial inquiry. *Id.*; *see also Ludecke v. Watkins*, 335 U.S. 160, 168–70 (1948) (deferring to Executive Branch determination that "war with Germany" persisted despite the fact that Germany had "surrender[ed]" and "Nazi Reich" had "disintegrate[ed]."). Simply put, the AUMF continues to supply the Government with the authority to detain Ali.[7]

Not surprisingly, this is not the first time that Ali has challenged the Executive's authority to detain him based on the passage of time. In 2013, our Circuit Court rejected this very argument, observing that the war against al Qaeda, the Taliban, and associated forces "obviously continues," and that the AUMF "does not have a time limit, and the Constitution allows detention of enemy combatants for the duration of hostilities." *Ali*, 736 F.3d at 552. Indeed it emphasized that, absent a differently-drawn statute, "it is not the Judiciary's proper role to devise a novel detention standard that varies with the length of detention." *Id.*; *see also Al-Alwi*, slip op. at 5 (noting that the AUMF does not "place[] limits on the length of detention in an ongoing conflict"); *cf. El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 843 (D.C. Cir. 2010) ("[W]hether the terrorist activities of

---

[7] Ali argues that, in order to avoid a "serious constitutional problem" – namely, the denial of due process rights – I must apply the canon of constitutional avoidance in order to construe the AUMF not to authorize his continued detention. Corrected Mot. at 33–34. That canon is inapplicable for two reasons. First, the AUMF is not "susceptible of two constructions," such that the canon would assist the Court in choosing one interpretation over another. *See Jones v. United States*, 529 U.S. 848, 857 (2000). As described above at length, the AUMF plainly and unmistakably applies here, and authorizes Ali's continued detention. Second, and as discussed below, the protections of the due process clause do not extend to Guantanamo Bay. *See infra* pp. 13–14. Thus, Ali cannot point to a "grave and doubtful constitutional question[]" of the kind required to trigger the avoidance canon. *Jones*, 529 U.S. at 857.

foreign organizations constitute threats to the United States 'are political judgments, decisions of a kind for which the Judiciary has neither aptitude, facilities[,] nor responsibility, and have long been held to belong in the domain of political power not subject to judicial intrusion or inquiry.'" (quoting *People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 182 F.3d 17, 23 (D.C. Cir. 1999))).

Presidents Trump and Obama have reported on a regular basis, including most recently in June 2018, that "[t]he United States remains in an armed conflict, including in Afghanistan and against the Taliban, and active hostilities remain ongoing." Notice of Supp. Auth. Ex., Text of a Letter from the President to the Speaker of the House of Representatives and the President Pro Tempore of the Senate (June 8, 2018) [Dkt. # 1537-1]. And Congress has not only refrained from repealing or amending the AUMF, but explicitly clarified in the National Defense Authorization Act of 2012 ("NDAA") that the AUMF gives the President authority to detain combatants "under the law of war without trial until the end of hostilities." NDAA, Pub. L. No. 112–81, §§ 1021(c), (b)(2), 125 Stat. 1298, 1562 (2011).[8] As such, the record amply demonstrates here that it is the political judgment of both branches that active hostilities indeed persist pursuant to the AUMF. As such, Ali's time-based arguments are wholly without merit. *See Ali*, 736 F.3d at 552.

---

[8] The conclusions of the political branches are consistent with the facts on the ground. The United States maintains a substantial military presence in Afghanistan, and U.S. troops continue to engage in a counterterrorism mission against al Qaeda, the Taliban, and associated forces in that region. *See* Dep't of Defense Report on Enhancing Security and Stability in Afghanistan at 3, 5–6 (Dec. 2017) [Dkt. # 1525-9]. This campaign involves traditional uses of military force, such as air strikes, ground operations, and combat enabler support. *See id.* at 3–7, 22–29.

## II. Ali's Due Process Arguments

Undaunted, Ali makes two additional due process arguments, one sounding in "substantive" and the other in "procedural" due process. In order to prevail under either theory, however, Ali must first establish that the protections of the due process clause extend to Guantanamo Bay detainees. Unfortunately for Ali, our Circuit Court has already held that the due process clause does *not* apply in Guantanamo. *See Kiyemba v. Obama*, 555 F.3d 1022, 1026–27 (D.C. Cir. 2009) ("*Kiyemba I*"), *vacated and remanded*, 559 U.S. 131, *reinstated in relevant part*, 605 F.3d 1046, 1047–48 (D.C. Cir. 2010) ("*Kiyemba II*"), *cert. denied*, 563 U.S. 954 (2011).

In *Kiyemba I*, our Circuit Court recited a string of Supreme Court cases for the proposition that "the due process clause does not apply to aliens without property or presence in the sovereign territory of the United States." *Kiyemba I*, 555 F.3d at 1026 (collecting cases). Although the Supreme Court vacated *Kiyemba I* in order to afford our Circuit the opportunity to pass on factual circumstances that had changed while the petition for certiorari was pending, *see* 559 U.S. at 131, our Circuit promptly reinstated *Kiyemba I*'s judgment and opinion in pertinent part in *Kiyemba II*, 605 F.3d at 1048. In subsequent cases, our Circuit has confirmed that *Kiyemba II* reinstated *Kiyemba I*'s holding on the extension of the due process clause to Guantanamo. *See Al Madhwani v. Obama*, 642 F.3d 1071, 1077 (D.C. Cir. 2011); *see also Bahlul v. United States*, 840 F.3d 757, 796 (D.C. Cir. 2016) (Millet, J., concurring); *Al Bahlul v. United States*, 767 F.3d 1, 33 (D.C. Cir. 2014) (Henderson, J., concurring). Applying *Kiyemba II*, district courts in this Circuit have *uniformly* refused to recognize due process claims by Guantanamo Bay detainees. *See*

*Salahi v. Obama*, Civ. No. 05-0569 (RCL) 2015 WL 9216557, *5 (D.D.C. Dec. 17, 2015) ("[T]he Due Process Clause of the Fifth Amendment, does not apply to Guantanamo detainees."); *Rabbani v. Obama*, 76 F. Supp. 3d 21, 25 (D.D.C. 2014) (same); *Ameziane v. Obama*, 58 F. Supp. 3d 99, 103 n.2 (D.D.C. 2014) (same); *Bostan v. Obama*, 674 F. Supp. 2d 9, 29 (D.D.C. 2009) (same). As such, Ali's due process arguments are unavailing and must be summarily dismissed.[9]

## CONCLUSION

For all of the foregoing reasons, the Court **DENIES** Ali's Corrected Motion for Order Granting Writ of Habeas Corpus [Dkt. # 1529]. A separate order consistent with this opinion will be issued this day.

RICHARD J. LEON
United States District Judge

---

[9] Petitioners contend that procedural due process mandates that they cannot continue to be detained (i) under a preponderance of the evidence standard or (ii) based on factual determinations made some time ago. Corrected Mot. at 3, 22–29. Once again, Ali supports this theory with various cases from outside the national security context. *See id.* at 23. Even assuming the due process clause extends to Guantanámo Bay – which, under the law of our Circuit, it does not – these cases are inapposite because our Circuit Court previously endorsed the very procedures Ali now challenges. *See Al-Bihani*, 590 F.3d at 878 (rejecting argument that "the prospect of indefinite detention" requires a reasonable doubt or clear-and-convincing standard, and instead endorsing a preponderance-of-the-evidence standard in determining whether detainee was part of or substantially supported Al Qaeda, the Taliban, or associated forces); *see also id.* at 879 (permitting use of hearsay evidence); *Al Odah v. United States*, 611 F.3d 8, 13 (D.C. Cir. 2010) ("It is now well-settled law that a preponderance of the evidence standard is constitutional in considering a habeas petition from an individual detained pursuant to authority granted by the AUMF."); *Awad v. Obama*, 608 F.3d 1, 10 (D.C. Cir. 2010) ("[A] preponderance of the evidence standard is constitutional in evaluating a habeas petition from a detainee held at Guantanamo Bay, Cuba."); *Latif v. Obama*, 666 F.3d 746, 755 (D.C. Cir. 2011) (affording presumption of regularity to government intelligence reports); *Ali*, 736 F.3d at 546 (affirming district court's inference that detainee captured at al Qaeda guesthouse was a member of al Qaeda). Thus, even were Ali eligible for the protections of the due process clause, these cases would foreclose his procedural arguments.